IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DARIUSH A. RICE,

    Plaintiff,

v.

MERITUS MEDICAL CENTER ET AL.,

    Defendants.

Civil No. 24-1208-BAH

## MEMORANDUM OPINION

Self-represented Plaintiff Dariush Rice brought suit against Meritus Medical Center ("Meritus"), Dr. Maulik Joshi, Dr. Asim Shabbir, and Dr. Joshua McClain (collectively "Defendants") alleging violations of federal civil rights law. ECF 1. Pending before the Court are the motion to dismiss filed by Defendants Meritus, Joshi, and Shabbir (the "Group Defendants"), ECF 23, and the motion to dismiss filed by Defendant McClain, ECF 29. Plaintiff filed an opposition to the Group Defendants' motion, ECF 27. All filings include memoranda of law and Defendant McClain's motion includes exhibits.[1] Plaintiff has also filed a "motion to compel the courts for an answer," ECF 25, along with two motions styled as requests for a "status update" on the progress of the case, ECFs 33 and 34. The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). Accordingly, for the reasons stated below, Defendants' motions to dismiss, ECFs 23 and 29, are GRANTED, Plaintiff's "motion to

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

compel," ECF 25, is DENIED as moot, and Plaintiff's motions for a status update, ECFs 33 and 34, are DENIED as moot.[2]

## I. BACKGROUND

On November 22, 2023, Plaintiff "accidentally shot himself in the leg and was taken to the hospital" via ambulance.[3] ECF 1, at 2. Plaintiff reports that when he arrived at the emergency room, "the staff members at the hospital were lined up all the way to the operating room laughing at [Plaintiff]" and he further alleges that he overheard some staff members use a racial slur. *Id.* He notes that he was "shocked" but "stayed quiet" because he "had to go under the knife." *Id.* According to Plaintiff, he then informed the hospital staff that he had a "bubble mass" on his leg that had "appeared after being shot" and asked them if they could "drain all the infection out." *Id.* He also asked if he could have antibiotics. *Id.* at 3. In response, Plaintiff says, nurses informed him that the mass would "drain on its own," and Dr. Shabbir elected to wash the wound with saline rather than prescribe antibiotics. *Id.* at 2–3. Upon discharge, Plaintiff's take-home paperwork indicated that he should keep his leg covered and compressed in order to facilitate drainage. *Id.* at 3.

On January 25, 2024,[4] Plaintiff returned to the emergency room to treat the abscess, which had "grown bigger and was extremely red" despite the gunshot wound itself being healed. ECF 1,

---

[2] The motions for a status update are denied as moot because the Court is addressing the two other substantive pending motions in this memorandum.

[3] The complaint does not provide the year of the incident but medical records Plaintiff attaches as "supplements" to the complaint at ECF 31 indicate that the events in question occurred on November 22, 2023. *See* ECF 31-2, at 82. The medical records attached by Defendant McClain to his motion to dismiss also indicate a date of November 22, 2023. *See* ECF 29-5, at 2.

[4] Again, the complaint does not indicate a date for this hospital admission. Medical records filed by Plaintiff as a supplement at ECF 31-1 provide the date as January 25, 2024. *See* ECF 31-1, at 44.

2

at 3. Plaintiff notes that a CAT scan showed his leg to be "full of blood and puss." *Id.* Plaintiff was treated by Dr. Joshi and Dr. McClain, who informed him that "he would have surgery to drain" the abscess. *Id.* Subsequently, Dr. Shabbir performed the drainage procedure and washed the site with saline. *Id.* Plaintiff again asked whether antibiotics were necessary and Dr. Shabbir advised Plaintiff to instead keep the wound site clean and compressed. *Id.* at 3–4.

On February 1, 2024,[5] Plaintiff returned to Dr. McClain for a subsequent follow-up, at which time he reported pain around the drainage site. ECF 1, at 4. Dr. McClain again advised Plaintiff to keep the area compressed and clean and did not recommend antibiotics. *Id.* Two weeks later, Plaintiff noticed that his leg was "turning deep red and starting to harden up," even though he believed the wound had already healed. *Id.* By the time Plaintiff was seen for another surgical evaluation on February 8,[6] he described the seemingly reoccurring abscess as being "bigger than a golf ball." *Id.* Upon examination, Dr. McClain determined that the inflammation was caused by fluid drainage and reiterated that Plaintiff could not receive antibiotics because of Plaintiff's diabetes diagnosis, though he urged Plaintiff to return if the problem did not improve. *Id.* In the following days, Plaintiff says, the abscess became "bigger than a baseball," prompting him to make an appointment to "get the drain completed" surgically. *Id.* at 5.

On the date of his follow-up surgery, February 18, 2024,[7] Plaintiff received "multiple IV bags of antibiotics," one of which induced itching. ECF 1, at 5. Several hours after Plaintiff's

---

[5] The complaint also does not provide dates for this follow-up visit. However, medical records attached to McClain's motion to dismiss provide a date of February 1, 2024. *See* ECF 29-5, at 2.

[6] Again, this date is not given in the complaint but appears to correspond to the medical records provided at ECF 29-5, at 2.

[7] As above, the exact date of this appointment is gleaned from the records attached by Plaintiff at ECF 31. *See* ECF 31-1, at 2.

admission, Dr. McClain came to transport Plaintiff for surgery. *Id.* During the surgery, Plaintiff refused general anesthetic, stating that he had previously had only localized numbing cream applied to the area, but the hospital staff "started to pressure [him] into taking something to calm [him] down." *Id.* Following the surgery, Plaintiff says he felt "nauseous" and was treated with fentanyl, though he had expressed a wish to avoid that type of medication. *Id.* Upon discharge, Plaintiff was instructed to avoid air travel to mitigate the risk of developing blood clots, causing him to miss a work-related training event. *Id.* at 6.

Plaintiff's complaint appears to enumerate two counts arising from these events: a "42 U.S.C. § 1983 civil rights" claim based on a "violation of section 1557 of the Patient Protection and Affordable Care Act" ("ACA"), and a 42 U.S.C. § 1981 claim for "racial discrimination/medical malpractice/deliberate indifference to [ ] medical wellbeing[.]"[8] ECF 1, at 1 (cleaned up). Plaintiff seeks injunctive relief as well as $1,000,000 in compensatory damages and an additional $1,000,000 in punitive damages. *Id.* at 6.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted." In considering a motion under this rule, courts discount legal conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial

---

[8] Judge Adam Abelson, who was previously the United States Magistrate Judge assigned to this action, also read Plaintiff's complaint as encompassing these two claims. ECF 3, at 2. Judge Abelson was sworn in as a United States District Judge on September 16, 2024.

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

Because Plaintiff brings this suit pro se, the Court must liberally construe his pleadings, holding them to a less stringent standard than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). This leniency has its limits, though. "A court may not construct the plaintiff's legal arguments for him, nor is a district court required to recognize 'obscure or extravagant claims defying the most concerted efforts to unravel them.'" *Runge v. Barton*, Civ. No. 6:08-0231-GRA, 2009 WL 3245471, at *1 (D.S.C. Oct. 2, 2009) (first citing *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993), then quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985)), *aff'd*, 368 F. App'x 361 (4th Cir. 2010).

### III. ANALYSIS

#### A. "Motion to Compel"

The Court turns first to the motion filed by Plaintiff at ECF 25, which Plaintiff calls a "motion to compel the courts for an answer on why the Court reversed the default judgment when defendants didn't timely answer or file an[] appearance within 20 days." *Id.* at 1. In this motion, Plaintiff avers both that the Court "didn't explain" why it denied Plaintiff's motion for default judgment and that the Defendants' opposition to the motion for default judgement consisted only of "lies" that the Court "overlooked[.]" *Id.* at 2. However, the Court has indeed already explained

its rationale for denying Plaintiff's motion for default judgment in the order entered on November 6, 2024. *See* ECF 22. Plaintiff's "motion to compel the court for an answer" will therefore be denied as moot. *C.f. Brosnahan v. JP Morgan Chase Bank*, Civ. No. 09-8224, 2010 WL 4269562, at *5 (D. Ariz. Oct. 25, 2010) (denying a pro se plaintiff's self-styled "motion to compel the court" where the court had already taken the requested action). However, for the sake of clarity, the Court will reiterate why Plaintiff's characterization is mistaken.

As the Court noted in its November 6 order, courts favor a "strong policy that cases be decided on the merits," even where a defendant has failed to timely answer a complaint in accordance with the Federal Rules of Civil Procedure. ECF 22, at 3 (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)). The reasoning behind this policy recognizes that "orders dismissing actions are the most severe" and so "such orders must be entered with the greatest caution." *Shaffer Equip. Co.*, 11 F.3d at 462. In weighing whether to enter default judgment and thereby avoid deciding a case on its merits, courts are to consider any prejudice to the judicial process and the administration of justice, as well as any prejudice to the parties, that would result from such a decision. *Id.* at 462–63. Put differently, courts should consider what is fair or "unfair" in the context of a particular scenario where default judgment is at issue. *Kronberg v. LaRouche*, 461 F. App'x 222, 225 (4th Cir. 2012). In its November 6 order, the Court explained that because Plaintiff had not shown he suffered any prejudice, save for a minor delay, and because the Defendants fully engaged in the case after filing their admittedly untimely answer, the case was best decided "with the full benefit of the adversarial process," that is, on the merits. ECF 22, at 3–4. The Court was, and remains, satisfied that a resolution on the merits is the proper outcome here.

6

### B.     Motions to Dismiss

The Court will evaluate the two pending motions to dismiss in tandem, analyzing both of Plaintiffs' claims under the standard of Rule 12(b)(6).[9]

####     1.     Plaintiff has not stated a claim under 42. U.S.C. § 1983

42 U.S.C. § 1983 provides that a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *See also Filarsky v. Delia*, 566 U.S. 377 (2012). Importantly, section 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017).

In other words, section 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999). To state a claim under section 1983, a plaintiff must allege that a person *acting under color of state law* deprived him of a constitutional right or a right conferred by a law of the United States. *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009).

---

[9] Defendant McClain makes the additional argument that Plaintiff's claims against him should be dismissed for failure of service. ECF 29-2, at 5. However, the Court determines that "insufficient service of process would not, alone," warrant dismissal of Plaintiff's complaint. *Ferebee v. United States*, Civ. No. 16-3482-GJH, 2017 WL 3141914, at *2 n.5 (D. Md. July 24, 2017). Where the process "gives the defendant actual notice of the pendency of the action, the rules, in general, are entitled to a liberal construction." *Curtis v. Md. Envtl. Serv.*, Civ. No. 17-2728-RDB, 2018 WL 1394020, at *2 (D. Md. Mar. 19, 2018) (citing *Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984)). Here, there is no dispute that Defendant McClain has actual notice of this action, and he has entered an appearance through counsel. Accordingly, the Court declines to dismiss Plaintiff's claims against Defendant McClain on the grounds of improper service.

By contrast, section 1983 "excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (internal quotations omitted).

Though it is not entirely clear from the complaint, Plaintiff seems to ground his 42 U.S.C. § 1983 claim on an alleged violation of section 1557 of the ACA, though the claim could be read as also or alternatively invoking the Fourteenth Amendment's guarantees of equal protection and due process. *See* ECF 1, at 1. Whatever the exact federal right in question may be, Plaintiff's section 1983 claim will be dismissed for failure to allege any violation on the part of an actor "clothed with the authority of state law." *Polk Cnty. v. Dodson*, 454 U.S. 312, 317–18 (1981). Plaintiff noted in prior filings that Meritus receives money from the federal government, but medical facilities that accept federal funding through programs such as Medicare and Medicaid are not "engaged in state action" by the mere receipt of those funds. *Carter v. Norfolk Cmty. Hosp. Ass'n, Inc.*, 761 F.2d 970, 972 (4th Cir. 1985); *see also Taite v. Express Primary Care, LLC*, Civ. No. 24-327-MJM, 2024 WL 3200614, at *4 (D. Md. June 27, 2024). And though the Court previously directed Plaintiff to supplement his complaint with additional information, if available, showing that Defendants could be considered state actors, *see* ECF 22, at 4, Plaintiff has not done so. The filing that Plaintiff characterizes as a supplement, ECF 31, instead merely restates assertions already made in the complaint and attaches medical records that do not address the question of whether Defendants may be considered state actors.[10] Without a showing that any Defendant may be considered a state actor, Plaintiff's claim or claims brought under 42 U.S.C. § 1983 must be dismissed.

---

[10] Plaintiff himself seemingly acknowledged that Defendants are not state actors in his response to the Group Defendants' motion to dismiss. *See* ECF 27, at 2 ("The plaintiff states 42 U.S.C. § 1983 doesn't apply because the defendants are not state actors . . . .").

2.  42 U.S.C. § 1981

Plaintiff also purports to bring a 42 U.S.C. § 1981 claim, which he characterizes as concerning "racial discrimination, medical malpractice, [and] deliberate indifference to [his] medical well being under the Fourteenth Amendment due process and equal protection violation." ECF 1, at 1. 42 U.S.C. § 1981 prohibits racial discrimination in making and enforcing of contracts. *See Spriggs v. Diamond Auto Glass*, 165 F.3d 1015, 1017–18 (4th Cir. 1999). To survive a motion to dismiss, a section 1981 claim must allege:

> (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.).

*Greene v. YRC, Inc.*, 987 F. Supp. 2d 644, 656 (D. Md. 2013) (quoting *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993)). Here, the complaint does not allege any facts that suggest the existence of any agreement between Plaintiff and Defendants that would be cognizable under section 1981. In other words, there is no indication that the parties had any kind of contract, and so there are no facts supporting any allegation that discrimination occurred in the making or performance of a contract, and thus no cognizable section 1981 claim exists. Section 1981 is not a general anti-discrimination statute but rather has the "specific function" of protecting "the equal right of '[a]ll persons within the jurisdiction of the United States' to 'make and enforce contracts' without respect to race." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474–75 (2006) (quoting 42 U.S.C. § 1981(a)). Accordingly, this count, too, fails to state a claim for relief and must be dismissed. *C.f. Awah v. Mansfield Kaseman Health Clinic*, Civ. No. 21-938-PX, 2021 WL 6197415, at *7–*8 (D. Md. Dec. 30, 2021) (finding that a 42 U.S.C. § 1981 claim for discrimination in medical treatment could not stand where the complaint did not allege the existence of any contractual relationship between the parties).

### 3. Medical Malpractice

Both the Group Defendants and Defendant McClain construe Plaintiff's complaint as bringing a standalone medical malpractice claim and argue that it, too, must be dismissed. *See* ECF 23, at 13 and ECF 29, at 15. The Court cannot determine that such a claim is unambiguously brought in the complaint. Rather, Plaintiff appears to bring claims only under 42 U.S.C. § 1983 and 42 U.S.C. § 1981, and appears to suggest only that "medical malpractice" constitutes an element of his section 1981 claim. *See* ECF 1, at 1. And Plaintiff reiterated in his response to the Group Defendants' motion to dismiss that his claims were brought only "under 42 U.S.C. § 1983 and 42 U.S.C. § 1981 against all defendants[.]" ECF 27, at 1. Even though district courts have a duty to construe pro se complaints liberally, they are not to "conjure up questions never squarely presented to them" and are not expected to be "mind readers." *Beaudett*, 775 F.2d at 1278. Given Plaintiff's express representations that he brings only two federal claims, the Court is reluctant to conclude that Plaintiff also asserts a standalone state medical malpractice claim.[11]

Even if Plaintiff were bringing such a claim, however, it would also be subject to dismissal. Medical malpractice cases in Maryland are governed by the state's Health Care Malpractice Claims statute, *see* Md. Code., Cts & Jud. Proc. § 3-2A-01 et seq., which requires plaintiffs to comply with "various administrative filing requirements set forth in" the statute before "initiating

---

[11] Similarly, to the extent the complaint could be interpreted to assert a standalone violation of section 1557 of the ACA, which was codified into law as 42 U.S.C. § 18116 and represents the statute's anti-discrimination provision, dismissal would nonetheless be appropriate. Where a plaintiff alleges discrimination on the basis of race in a section 1557 violation, they must allege facts adequate to state a Title VI claim. *See Taite*, 2024 WL 3200614, at *4. While Plaintiff has alleged conduct that is undoubtedly offensive—the uttering of a repugnant racial slur—Plaintiff offers that one remark as his sole evidence of discrimination, and moreover does not impart it to any of the named Defendants. *C.f. McNeal v. Montgomery Cnty.*, 307 F. App'x 766, 774 (4th Cir. 2009) (determining that, in the Title VII context, a "derogatory remark" cannot be used to prove discriminatory animus if it is "stray or isolated," unless "the remarks upon which plaintiff relies were related to the [ ] decision in question").

suit in Maryland state courts *and federal courts located in Maryland.*" *Lewis v. Waletzky*, 31 A.3d 123, 125 (Md. 2011) (emphasis added). These requirements mandate that a plaintiff must "exhaust the prerequisite administrative remedy" before filing a lawsuit, or else their medical malpractice claim will be dismissed. *Roberts v. Suburban Hosp. Ass'n, Inc.*, 532 A.2d 1081, 1084 (Md. App. 1987). Here, there is no indication in the complaint that any such procedures were followed. Absent a showing that Plaintiff complied with the necessary administrative requirements, any standalone medical malpractice claim is also subject to dismissal.

## IV. CONCLUSION

For the foregoing reasons, Defendants motions to dismiss, ECFs 23 and 29, are GRANTED, Plaintiff's "motion to compel," ECF 25, is DENIED as moot, and Plaintiff's motions for a status update, ECFs 33 and 34, are DENIED as moot.

A separate implementing Order will issue.

Dated: June 26, 2025

/s/
Brendan A. Hurson
United States District Judge

11